**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| MKM Healthcare Solutions LLC, et al., | No. CV-20-00255-TUC-CKJ |
| Plaintiffs, | **ORDER** |
| v. | |
| Biotronik Incorporated, | |
| Defendant. | |

Before the Court are Defendant's Motion to Transfer Venue to the United States District Court for the District of Oregon pursuant to 28 U.S.C. § 1404 (Doc. 3) and Defendant's Motion to Strike Information Presented by Plaintiffs That They Agreed in Writing were 408 Communications (Doc. 11). For the following reasons, Defendant's Motion to Transfer Venue is GRANTED, and Defendant's Motion to Strike 408 Communications is DENIED. The Clerk of Court is instructed to transfer this case to the U.S. District Court for the District of Oregon, Portland Division.

## BACKGROUND[1]

In 2014, Defendant Biotronik Incorporated hired Plaintiff Michael McCormick to assist in selling its products and services in the state of Arizona. (Doc. 1-5, ¶ 19) Plaintiff works and resides in Pima County, Arizona. *Id.*, ¶ 3. Defendant is a medical technology corporation organized under the laws of Delaware with its principal place of business in Lake Oswego, Oregon. (Doc. 4, ¶ 4) The services Plaintiff performed on behalf of

---

[1] The information in the background section is taken from the record as a whole including Plaintiffs' original complaint and the parties' motions leading up to this Order.

Defendant included, but were not limited to: (a) promoting, selling, distributing, and servicing Defendant's healthcare products; (b) taking all actions necessary to sell Defendant's products to customers in the assigned territory; (c) obtaining technical certifications from Defendant regarding its products and maintaining a high degree of technical knowledge regarding the operation and use of those products; (d) providing support services to physicians, hospitals, clinics, and allied health professionals within the territory; (e) serving as an intermediary between Defendant and its participating physicians during physician training sessions; (f) serving as a mentor to trainees on the occasions Plaintiff attended training sessions; and (g) completing training forms during physician training sessions. (Doc. 3 at 2-3; Doc. 1-5, ¶¶ 45, 48, 67)  In October 2019, Defendant sent Plaintiff a notice of termination concerning their most recent sales agreement (Doc. 4, ¶ 23); and in May 2020, Plaintiff filed suit in Pima County Superior Court alleging, inter alia, Defendant illegally terminated their agreement without cause (Doc. 1-5 at 13-14).

## PROCEDURAL HISTORY

On May 20, 2020, Plaintiffs MKM Healthcare Solutions, LLC, and Michael McCormick filed their complaint in Pima County Superior Court alleging (i) violation of Arizona's Civil RICO statute, Ariz. Rev. Stat. Ann. § 13-2301(D)(4)(b) (2020); (ii) defamation per se; (iii) defamation; (iv) breach of contract; (v) breach of covenant of good faith and fair dealing; and seeking (vi) declaratory judgment of obligation to defend, indemnify, or hold harmless.  On June 14, 2020, Defendant filed a notice of removal under 28 U.S.C. §§ 1331, 1441(a) and 1446.  On June 16, 2020, Defendant filed a motion to transfer venue under 28 U.S.C. § 1404 and its answer to Plaintiffs' complaint. On June 30, 2020, Plaintiffs filed their response to the motion to transfer, in which they requested oral argument. On July 13, 2020, Defendant filed its reply and a motion to strike 408 communications in Plaintiffs' response.  On August 25, 2020, the Court held oral arguments on Defendant's Motion to Transfer Venue.  This Order follows.

## LEGAL STANDARD

28 U.S.C. § 1404(a) provides a mechanism for enforcement of forum selection

1   clauses that point to a particular federal district. *Atl. Marine Constr. Co. v. U.S. Dist. Ct.*

2   *for W. Dist. of Tex.*, 571 U.S. 49, 59 (2013).  Under § 1404(a), the district court has

3   discretion to "transfer any civil action . . . to any district . . . to which all parties have

4   consented."   28 U.S.C. § 1404(a).   "[T]he presence of a forum selection clause is a

5   'significant factor' in the court's § 1404(a) analysis." *Jones v. GNC Franchising, Inc.*, 211

6   F.3d 495, 499 (9th Cir. 2000) (citation omitted).  Although a plaintiff's choice of forum is

7   ordinarily entitled to some deference, a valid forum selection clause alters that calculus.

8   *See Atl. Marine*, 571 U.S. at 63 ("[W]hen a plaintiff agrees by contract to bring suit only

9   in a specified forum—presumably in exchange for other binding promises by the

10   defendant—the plaintiff has effectively exercised its "venue privilege" before a dispute

11   arises").

12          Thus, a forum-selection clause is "controlling unless the plaintiff [makes] a strong

13   showing that: (1) the clause is invalid due to 'fraud or overreaching,' (2) 'enforcement

14   would contravene a strong public policy of the forum in which suit is brought,' . . . or (3)

15   'trial in the contractual forum will be so gravely difficult and inconvenient that [the litigant]

16   will for all practical purposes be deprived of his day in court.' " *Gemini Techs., Inc. v.*

17   *Smith & Wesson Corp.*, 931 F.3d 911, 915 (9th Cir. 2019) (quoting *M/S Bremen v. Zapata*

18   *Off-Shore Co.*, 407 U.S. 1, 15 (1972).

19          The presence of a valid forum-selection clause also requires the court to adjust its

20   § 1404(a) analysis in three ways. *Atl. Marine*, 571 U.S. at 63.  "First, the plaintiff's choice

21   of forum merits no weight.  Rather, as the party defying the forum-selection clause, the

22   plaintiff bears the burden of establishing that transfer to the forum for which the parties

23   bargained is unwarranted."  *Id.*  "Second, a court evaluating a . . . § 1404(a) motion to

24   transfer based on a forum-selection clause should not consider arguments about the parties'

25   private interests.  *Id.* at 64.  "Third, when a party bound by a forum-selection clause flouts

26   its contractual obligation and files suit in a different forum, a § 1404(a) transfer of venue

27   will not carry with it the original venue's choice-of-law rules—a factor that in some

28   circumstances may affect public-interest considerations."  *Id.* (citation omitted).  "Only

1    under extraordinary circumstances unrelated to the convenience of the parties should a

2    § 1404(a) motion be denied." *Id.* at 62.

3                                            **ANALYSIS**

4            Defendant brings its Motion to Transfer Venue under § 1404(a) arguing the Court

5    should transfer this case to the U.S. District Court for the District of Oregon due to the

6    forum selection clause in its Authorized Independent Sales Representative Agreement

7    ("Agreement") with Plaintiffs.  (Doc. 3 at 5-12)  In response, Plaintiffs argue: (i) the forum

8    selection clause does not mandate transfer; (ii) public and private interest factors weigh

9    against transfer; and (iii) the citizenship of potential and unknown defendants may destroy

10   federal diversity jurisdiction.  (Doc. 6 at 3-10)  The Court finds Plaintiffs fail to meet their

11   burden of establishing that transfer of their claims to the District of Oregon is unwarranted.

12   Plaintiffs' arguments are addressed in the order in which they are presented.

13   **I.        The Forum Selection Clause Encompasses All Claims**

14           Plaintiffs first argue that forum selection clauses do not ordinarily control claims

15   arising in tort.  (Doc. 6 at 3)  Plaintiffs assert that since the "gravamen of the [c]omplaint"

16   revolves around non-contract claims, their case should remain in Arizona district court.  *Id.*

17   Plaintiffs also argue that the State of Arizona has a vested interest in ensuring that the out-

18   of-state Defendant is not permitted to defraud its citizens and avoid liability by moving the

19   case to Oregon.  *Id.* at 5.  Finally, Plaintiffs assert that it is Defendant's burden to provide

20   a rational basis explaining why the Court should enforce the forum selection clause in the

21   Agreement and that it has failed to meet its burden.  *Id.* at 6.

22           In response, Defendant argues the forum selection clause applies to all Plaintiffs'

23   claims, as the clause incorporates both the Agreement and the "[s]ervices" which Plaintiffs

24   were contracted to provide.  (Doc. 11 at 2-3)  Defendant asserts that Plaintiffs' request that

25   the Court weigh the claims to determine the appropriate venue is unsupported and

26   inappropriate.  *Id.* at 3.  Defendant also argues that Plaintiffs' tort claims arise out of their

27   performance of the "services" outlined in the Agreement.  *Id.* at 4.  Defendant requests that

28   the forum selection clause be broadly interpreted due to its comprehensive language.  *Id.*

- 4 -

1

## A.  Scope of Clause

2     In *Yei A. Sun v. Advanced China Healthcare, Inc.*, 901 F.3d 1081 (9th Cir. 2018),

3 the Ninth Circuit analyzed the scope of a similar forum selection clause.  In that case, the

4 plaintiffs invested millions of dollars in Advanced China Healthcare. As part of the

5 investment process, they entered into two share purchase agreements with the defendant

6 that contained a forum selection clause which stated:

7
> With respect to any disputes *arising out of* or *related to* this
8 > Agreement, the parties consent to the exclusive jurisdiction of,
> and venue in, the state courts in Santa Clara County in the State
9 > of California (or in the event of exclusive federal jurisdiction,
10 > the courts of the Northern District of California).

11
901 F.3d at 1085 (emphasis added).
12
13     Notwithstanding the clause, the plaintiffs brought suit under Washington securities

14 law in Washington district court.  In affirming the district court's enforcement of the clause,

15 the Ninth Circuit ruled that the plaintiffs failed to carry their burden of demonstrating

16 exceptional circumstances that would justify bringing suit in Washington.

17     In analyzing the forum selection clause, the court instructed:

18
> We apply federal contract law to interpret the scope of a forum-
19 > selection clause even in diversity actions[.] In interpreting a
> forum-selection clause under federal law, we look for guidance
20 > to general principles for interpreting contracts.

21
> By its terms, the forum-selection clause here applies to "any
22 > disputes arising out of or related to" the Share Purchase
> Agreements. . . We have held that forum-selection clauses
23 > covering disputes "arising out of" a particular agreement apply
> only to disputes "relating to the interpretation and performance
24 > of the contract itself." By contrast, forum-selection clauses
25 > covering disputes "relating to" a particular agreement apply to
> any disputes that reference the agreement or have some
26 > "logical or causal connection" to the agreement.

27
28 901 F.3d at 1086 (quotation marks and citations omitted).

1

In the forum selection clause at hand, the parties agreed to:

2

3

4

5

> [T]he exclusive jurisdiction and venue of the federal and state courts located in Clackamas, Oregon, in *any* suit, action, or proceeding *arising out of* or *based upo*n this Agreement *or the Services*.[2]

6

(Doc. 11 at 1) (emphasis added).

7

8

9

10

11

12

13

14

15

Applying the guidance outlined in *Yei*, and recognizing the additional language referencing "[s]ervices," the Court finds the forum selection clause here applies to disputes relating to the interpretation and performance of the Agreement *and* to the interpretation and performance of Plaintiffs' "Services."  Moreover, performance of the Agreement necessarily includes the sales services which Plaintiffs were contracted to provide.  The services included, at least in part, duties related to the administration of Defendant's physician training program. Plaintiffs' tort claims arise directly out of Plaintiffs' own contention that Defendant illegally manipulated the training program and that Plaintiffs were damaged by false accusations that they had a part in the illicit activity.

16

17

18

19

20

In support of the Court's interpretation, the Ninth Circuit has construed "arising out of this [c]ontract" language to be "broad enough to encompass tort claims based on the contract's underlying transaction." *Salameh v. 5th Rock, LLC*, 656 F. App'x 803 (9th Cir. 2016).  Other circuit courts of appeal have interpreted similar forum selection clauses to cover both contract and tort claims, reasoning:

21

22

23

24

25

> We cannot accept the invitation to reward attempts to evade enforcement of forum selection agreements through artful pleading of [tort] claims in the context of a contract dispute. . . . The better rule, we think, is that contract-related tort claims involving the same operative facts as a parallel claim for breach of contract should be heard in the forum selected by the contracting parties[,]

26

27

28

---

[2] The Agreement also contains a choice-of-law provision which states that it must be "governed by and construed in accordance with the internal laws of the State of Oregon without giving effect to any choice or conflict of law provision or rule." (Doc. 3 at 3)

1  *Lambert v. Kysar*, 983 F.2d 1110, 1121–22 (1st Cir.1993) (quotation marks and citation

2  omitted), and,

3

4  > While the clause [at hand] speaks of covering suits dealing with
   > the enforcement or breach of the contract, the causes of action
   > here all arise out of [defendant's] contractual relationship with
5  > [the plaintiffs]. Though their causes of action sound in tort, the
   > [plaintiffs] are complaining about the failure of [defendant] to
6  > fulfill his contractual obligations. We conclude that the suit is
   > covered by the forum-selection clause[,]
7

8

9  *Ginter ex rel. Ballard v. Belcher, Prendergast & Laporte*, 536 F.3d 439, 445 (5th Cir.

10  2008).  Finally, in *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 593-94 (1991), the

11  Supreme Court determined that the forum selection clause in respondent's passage contract

12  was enforceable and that it covered plaintiff's causes of action arising in tort.  In *Carnival*,

13  the forum selection clause stated:

14  > It is agreed by and between the passenger and the Carrier that
   > all disputes and matters whatsoever arising under, in
15  > connection with or incident to this Contract shall be litigated,
   > if at all, in and before a Court located in the State of Florida,
16  > U.S.A., to the exclusion of the Courts of any other state or
   > country.
17

18

19  499 U.S. at 587–88.

20      In contrast to the reasoning elucidated in *5th Rock*, *Lambert*, *Ginter*, and *Carnival*,

21  Plaintiffs raise the argument—for the first time during oral arguments—that discrete

22  language in the Ninth Circuit's interpretation of an arbitration clause in *United States ex*

23  *rel. Welch v. My Left Foot Children's Therapy, LLC*, 871 F.3d 791 (9th Cir. 2017) must

24  guide this Court's decision whether to transfer their case to a different venue.  Specifically,

25  Plaintiffs argue that the following conclusion in *My Left Foot* controls the Court's

26  interpretation of the forum selection clause at hand:

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

> [W]e are persuaded by the reasoning of the Fifth and Eleventh Circuits, which have previously interpreted arbitration agreements covering disputes that "arise out of" or "relate to" a contractual or employment relationship. Though neither circuit decided this issue in the context of a [False Claims Act] claim, we find their textual analysis compelling and instructive. In both cases, the courts found that a plaintiff's sexual assault claims did not "arise out of" or "relate to" the plaintiff's employment or workplace simply because the assault occurred at the plaintiff's workplace or would not have occurred but for the plaintiff's employment. As both circuits explained, the sexual assault did not "arise out of" or "relate to" the plaintiffs' employment because there was no direct connection between their claims and employment where the defendant "could have engaged in" the same conduct "even in the absence of any contractual or employment relationship with [the plaintiff]," and a third party "could have brought the[ ] same claims ... based on virtually the same alleged facts."

871 F.3d at 799.

The factual circumstances and interpretive suggestion outlined in *My Left Foot* are inapposite to the forum selection clause here.  This case fails to relate to a *qui tam* action, the scope of an arbitration clause, or allegations of sexual assault.  Plaintiffs' claims involve causes of action that arise directly out of their Agreement with Defendant to sell its products in a specific territory of the United States.  The forum selection clause *explicitly* applies to both the contract between the parties and the "[s]ervices" Plaintiffs provided to Defendant.  Plaintiffs' conspicuous omission of *any* argument that justifies disregarding the plain language of their Agreement is fatal to their cause.  The discrete language in *My Left Foot* fails to influence this Court's determination of the forum selection clause at hand, nor does it override Supreme Court precedent discussing the proper analysis for a motion to transfer venue under § 1404(a).

Based on the information in Plaintiffs' complaint—including the admissions that they participated in physician training sessions concerning Defendant's products and that they were falsely accused of violating the law in conducting those sessions—and in

1    recognizing that the forum selection clause "aris[es] out of and [is] based upon" the

2    *services* Plaintiffs provided, the Court finds the forum selection clause covers Plaintiffs'

3    contract and tort claims, as the tort claims undoubtedly relate to the services, including

4    training, Plaintiffs provided for Defendant. Accordingly, the Court rejects Plaintiffs'

5    request to limit the scope of the forum selection clause so that case transfer is impossible.

6                    **II.    Plaintiffs Fail to State Convincing Public Policy Objections**

7            Plaintiffs next argue that in the interests of public policy, their claims should remain

8    in Arizona.  (Doc. 6 at 6-8)  Plaintiffs assert that there is a public interest in allowing their

9    claims to proceed in Arizona in order to allow the Arizona Attorney General to intervene

10   in their cause without incurring unnecessary travel expenses. *Id.* at 6.  Plaintiffs also argue,

11   albeit in footnotes, that private interests weigh in favor of keeping their case in Arizona.

12   *Id.*, n.4 at 7.  Finally, Plaintiffs again invoke State interests by arguing that they have a

13   statutory obligation to ensure the Arizona RICO statute is properly interpreted and enforced

14   by maintaining their claim in Arizona court. *Id.* at 8.

15           In response, Defendant asserts that the Arizona Attorney General's statutory rights

16   are permissive and that the Attorney General has yet to demonstrate any interest in

17   intervening in Plaintiffs' private cause of action.  (Doc. 11 at 5).  Defendant also argues

18   that Plaintiffs fail to cite any statute or judicial decision which declares that State RICO

19   claims must be addressed in the state under which they are filed.  *Id.* at 5-6.  Defendant

20   declares that this Court has transferred such cases and that federal courts across the country

21   repeatedly invoke the laws of other jurisdictions in adjudicating claims over which they

22   preside. *Id.* at 6.

23           In *Atlantic Marine Construction Co., Inc. v. United States District Court for the*

24   *Western District of Texas*, 571 U.S. 49 (2013), the Supreme Court offered explicit advice

25   to courts analyzing § 1404(a) motions to transfer.  It instructed:

26

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

> [A] court evaluating a defendant's § 1404(a) motion to transfer based on a forum-selection clause should not consider arguments about the parties' private interests. When parties agree to a forum-selection clause, they waive the right to challenge the preselected forum as inconvenient or less convenient for themselves or their witnesses, or for their pursuit of the litigation. A court accordingly must deem the private-interest factors to weigh entirely in favor of the preselected forum.

*Atl. Marine*, 571 U.S. at 64.

In direct contravention to this instruction, Plaintiffs argue their claims belong in Arizona to avoid a non-existent intervenor from being inconvenienced. Plaintiffs go even further by outlining private interests that the Court should consider in their favor and against case transfer. Plaintiffs' convenience argument and assertion of private interests stand in opposition to the Court's instructions in *Atlantic Marine*. The arguments also nullify the forum selection clause for which they presumably bargained in their Agreement with Defendant. *See Atl. Marine*, 571 U.S. at 63 ("The enforcement of valid forum selection clauses, bargained for by the parties, protects their legitimate expectations and furthers vital interests of the justice system."). As such, these arguments fail.

Valid public-interest factors may include "the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; [and] the interest in having the trial of a diversity case in a forum that is at home with the law." *Atl. Marine*, 571 U.S. at 62 n.6. However, those factors will rarely defeat a transfer motion so that the practical result is that the forum selection clause should control except in unusual cases. *Id.* at 64. While Plaintiffs' final argument on this issue reflects a choice of law preference for Arizona, that argument is not strong enough for the Court to override the valid forum selection clause which dictates otherwise. *See Atl. Marine*, 571 U.S. at 65 ("[A] plaintiff who files suit in violation of a forum-selection clause enjoys no such 'privilege' with respect to its choice of forum, and therefore it is entitled to no concomitant 'state-law advantages'"). Accordingly, Plaintiffs' public and private policy objections to transfer of their case to the District of Oregon are DENIED.

### III.    Maintaining Diversity Jurisdiction

In their last objection to case transfer, Plaintiffs argue that their claims should remain in this Court because federal diversity jurisdiction could be abrogated altogether should they name other defendants in the future.  In fact, Plaintiffs request that the Court allow them limited discovery to ascertain the identity and citizenship of potential defendants to see if those defendants would destroy diversity. (Doc. 6 at 8-10)  In response, Defendant argues that Plaintiffs cannot avoid a controlling forum selection clause by arguing that, at some point down the road, they may attempt to add other parties that could destroy federal jurisdiction.  (Doc. 11 at 8-9).  Defendant adds that the Ninth Circuit has long held that post-removal amendments are "of no significance with regard to removal jurisdiction [as the relevant jurisdictional inquiry must be determined by] the complaint as of the time the removal petition was filed[,]" and that to allow Plaintiffs limited discovery would be skirt the ultimate issue which is whether Plaintiffs are bound by the parameters of the valid forum selection clause.  *Id.*

Despite Plaintiffs' argument to the contrary, there is nothing in the existing record which demonstrates that removal to this Court was premature or inappropriate. As Defendant correctly highlights, "[i]n determining the existence of removal jurisdiction, based upon a federal question, the court must look to the complaint as of the time the removal petition was filed. Jurisdiction is based on the complaint as originally filed and not as amended." *Abada v. Charles Schwab & Co.*, 300 F.3d 1112, 1117 (9th Cir. 2002) (citation omitted). Additionally, Plaintiffs fail to cite any supporting caselaw for the proposition that the Court should allow preliminary discovery to analyze whether non-joined parties could destroy future federal diversity jurisdiction in evaluating a motion to transfer under § 1404(a).

It will be the prerogative of another court to determine whether the joinder of future non-diverse defendants will comport with principles of fundamental fairness and relevant guidelines set out in the federal code.  *See Tabi v. Doe*, No. EDCV 18-714 DMG (JC), 2019 WL 5107102, at *7 (C.D. Cal. June 13, 2019) (quoting *Desert Empire Bank v. Ins.*

1   *Co. of N. Am.*, 623 F.2d 1371, 1375 (1980)) ("[E]ven if the technical requirements of Rule

2   20 are satisfied, a court must also determine whether granting permissive joinder in the

3   particular case would "comport with the principles of fundamental fairness."); *see also*

4   28 U.S.C. § 1447(e) ("If after removal the plaintiff seeks to join additional defendants

5   whose joinder would destroy subject matter jurisdiction, the court may deny joinder, or

6   permit joinder and remand the action to the State court."). The Court is unpersuaded by

7   Plaintiffs' hypotheticals that argue otherwise.

8   **IV.    Defendant's Motion to Strike 408 Communications**

9   In Defendant's reply (Doc. 11, n.4 at 9), it requests that the Court strike an

10  attachment appended to Plaintiffs' response (Doc. 6-1 at 2), which appears to be email

11  correspondence between counsel for the parties. Defendant argues that the attachment is

12  inappropriate, self-serving, and represents confidential communication under Federal Rule

13  of Evidence 408.

14  Federal Rule of Civil Procedure 12(f) allows a court to "strike from a pleading" any

15  matter that is "redundant, immaterial, impertinent, or scandalous." *See also* LRCiv

16  7.2(m)(1) ("a motion to strike may be filed only if it is authorized by statute or rule, . . . or

17  if it seeks to strike any part of a filing or submission on the ground that it is prohibited (or

18  not authorized) by a statute, rule, or court order"). Additionally, Federal Rule of Evidence

19  408 "Compromise Offers and Negotiations" states:

20
21          (a) Prohibited Uses. Evidence of the following is not
            admissible--on behalf of any party--either to prove or disprove
22          the validity or amount of a disputed claim or to impeach by a
            prior inconsistent statement or a contradiction:
23
24          (1) furnishing, promising, or offering--or accepting, promising
            to accept, or offering to accept--a valuable consideration in
25          compromising or attempting to compromise the claim; and

26          (2) conduct or a statement made during compromise
27          negotiations about the claim--except when offered in a
            criminal case and when the negotiations related to a claim by a
28          public office in the exercise of its regulatory, investigative, or

1

enforcement authority.

(b) Exceptions. The court may admit this evidence for another purpose, such as proving a witness's bias or prejudice, negating a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution.

Here, Defendant fails to demonstrate, much less argue, that the communication appended to Plaintiffs' response represents any attempt of claim compromise or negotiation.  Regardless, the correspondence had no effect on this Court's determination of its Motion to Transfer Venue or the issues outlined therein.  Accordingly, Defendant's Motion to Strike is DENIED.

**Accordingly, IT IS ORDERED:**

1.     Defendant's Motion to Transfer Venue to the United States District Court for the District of Oregon pursuant to 28 U.S.C. § 1404 (Doc. 3) is GRANTED.

2.     Defendant's Motion to Strike Information Presented by Plaintiffs that they Agreed in Writing were 408 Communications (Doc. 11) is DENIED.

3.     The Clerk of Court is instructed to transfer this case to the U.S.  District Court for the District of Oregon, Portland Division, and close this file.

Dated this 28th day of August, 2020.

Honorable Cindy K. Jorgenson
United States District Judge